IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARKET-ALERTS PTY. LTD., )<br><br>Plaintiff, )<br><br>v. )<br><br>BLOOMBERG FINANCE L.P., et al, )<br><br>Defendants. ) | Civil Action No.  12-780-GMS |
| MARKET-ALERTS PTY. LTD., )<br><br>Plaintiff, )<br><br>v. )<br><br>THE CHARLES SCHWAB CORP., et al, )<br><br>Defendants. ) | Civil Action No.  12-781-GMS |
| MARKET-ALERTS PTY. LTD., )<br><br>Plaintiff, )<br><br>v. )<br><br>E*TRADE CLEARING LLC, et al, )<br><br>Defendants. ) | Civil Action No.  12-782-GMS |
| MARKET-ALERTS PTY. LTD., )<br><br>Plaintiff, )<br><br>v. )<br><br>TD AMERITRADE HOLDING CORP., et al, ) | Civil Action No.  12-783-GMS |

|                                                        |     |                              |
|--------------------------------------------------------|-----|------------------------------|
| Defendants.                                            | )   |                              |
|                                                        | )   |                              |
|                                                        | )   |                              |
| MARKET-ALERTS PTY. LTD.,                               | )   |                              |
|                                                        | )   |                              |
| Plaintiff,                                             | )   |                              |
|                                                        | )   |                              |
| v.                                                     | )   | Civil Action No. 12-784-GMS  |
|                                                        | )   |                              |
| OM SECURITIES, LLC d/b/a TRADE MONSTER, et al,         | )   |                              |
|                                                        | )   |                              |
| Defendants.                                            | )   |                              |
|                                                        | )   |                              |
|                                                        | )   |                              |
| MARKET-ALERTS PTY. LTD.,                               | )   |                              |
|                                                        | )   |                              |
| Plaintiff,                                             | )   |                              |
|                                                        | )   |                              |
| v.                                                     | )   | Civil Action No. 12-785-GMS  |
|                                                        | )   |                              |
| ESIGNAL.COM, INC., et al,                              | )   |                              |
|                                                        | )   |                              |
| Defendants.                                            | )   |                              |

2

Adam W. Poff, Esquire and Pilar G. Kraman, Esquire of YOUNG, CONAWAY, STARGATT & TAYLOR, LLP, Wilmington, Delaware, and Adrian M. Pruetz, Esquire, Andrew Y. Choung, Esquire, Erica Van Loon, Esquire, and Jessica Wood, Esquire of GLASER, WEIL, FINK, JACOBS, HOWARD, AVCHEN & SHAPIRO LLP, Los Angeles, California. Attorneys for Plaintiff.

David E. Moore, Esquire, Richard L. Horwitz, Esquire, and Bindu A. Palapura, Esquire of POTTER, ANDERSON & CORROON LLP, Wilmington, Delaware, and Michael Levin, Esquire, and Maneesh Gupta, Esquire of WILSON, SONSINI, GOODRICH & ROSATI PC, Palo Alto, California, and Larry L. Shatzer, Esquire of WILSON, SONSINI, GOODRICH & ROSATI PC, Washington, DC, and Brian D. Range, Esquire of WILSON, SONSINI, GOODRICH & ROSATI PC, Austin, Texas, and Robert P. Lord, Esquire, Tammy J. Terry, Esquire, and Aly Z. Dossa, Esquire of OSHA LIANG LLP, Houston, Texas. Attorneys for Moving Defendants.

## OPINION

February 5 , 2013
Wilmington, Delaware

3

SLEET, Chief Judge.

## I.    INTRODUCTION

On June 20, 2012, the plaintiff, Market-Alerts Pty. Ltd. ("Market-Alerts"), brought the

above-captioned six lawsuits against multiple defendants,[1] alleging infringement of U.S. Patent

No. 7,941,357 (the "'357 Patent"). On October 15, 2012, several of the defendants (the

"petitioning defendants") filed a Petition for Post-Grant Review of the '357 Patent under 35

U.S.C. § 321 and § 18 of the America Invents Act (the "AIA"). (D.I. 16, Ex. B.)[2] On November

9, 2012, the Bloomberg defendants, the E*TRADE defendants, the TD Ameritrade defendants,

and Thinkorswim Group, Inc.[3] moved to stay this litigation pending post-grant review pursuant

to § 18(b) of the AIA. (D.I. 14.) The Schwab defendants and optionsXpress defendants then

---

[1] The 12-780 action names the following defendants: Bloomberg Finance LP, Bloomberg LP, and Bloomberg Inc. (collectively, the "Bloomberg defendants").

    The 12-781 action names: (1) The Charles Schwab Corporation, Charles Schwab & Co., Inc., and Schwab Holdings, Inc. (collectively, the "Schwab defendants"); (2) optionsXpress Holdings Inc. and optionsXpress, Inc. (collectively, the "optionsXpress defendants"); (3) Tradeking Group Inc., Tradeking Holdings LLC, Tradeking LLC (collectively the "Tradeking defendants"); (4) Recognia Inc. and Recognia US Inc. (collectively, the "Recognia defendants"); and (5) Lightspeed Financial Inc. and Lightspeed Trading LLC (collectively, the "Lightspeed defendants").

    The 12-782 action names: E*TRADE Clearing LLC, E*TRADE Financial Corporation, and E*TRADE Securities LLC (collectively, the "E*TRADE defendants").

    The 12-783 action names: (1) TD Ameritrade Holding Corp., TD Ameritrade IP Company, Inc., and TD Ameritrade, Inc. (collectively, the "TD Ameritrade defendants"); and (2) Thinkorswim Group, Inc.

    The 12-784 action names: OM Securities LLC and optionMonster Holdings Inc.

    The 12-785 action names: eSignal.com Inc., IBG LLC, Interactive Brokers Corporation, Interactive Data LLC, and Interactive Data Corporation.

[2] Unless otherwise noted, all docket item citations are to *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P., et al.*, No. 12-780-GMS.

[3] The court refers to those defendants who filed or joined in the original motion to stay (D.I. 14) as the "moving defendants." To summarize, those parties are: (1) the Bloomberg defendants; (2) the Schwab defendants; (3) the optionsXpress defendants; (4) the E*TRADE defendants; (5) the TD Ameritrade defendants; and (6) Thinkorswim Group, Inc. This represents all the defendants in the 12-780, 12-782, and 12-783 actions. None of the defendants in the 12-784 and 12-785 actions have joined in the motion to stay. In the 12-781 action, the following defendants also have failed to join in the motion: (1) the Tradeking defendants; (2) the Recognia defendants; and (3) the Lightspeed defendants. All defendants, however, agree that a stay is appropriate in this case, and none opposes entry of a stay. (D.I. 24 at 5.)

filed a separate motion to stay on December 21, 2012. (No. 12-781, D.I. 38.) On January 4, 2013, they withdrew that request and joined in the pending, November 9, 2012 motion to stay. (No. 12-781, D.I. 42.) That motion is presently before the court, and, for the reasons that follow, the court will order that all six actions be stayed pending post-grant review.

## II.    BACKGROUND

Market-Alerts claims to be the exclusive owner of all rights to the '357 Patent, which is entitled "Trading System." (D.I. 1 at ¶ 8.) Claim 1 of the '357 Patent recites:

> A method of informing users of stock market events, comprising the steps of: (a) receiving real-time stock market data on a network of computers; (b) receiving on the network of computers instructions from a user to specify watch data defining an event, the watch data including a stock market technical analysis request specifying technical analysis formulae to be applied to the real-time stock market data; (c) using the network of computers to periodically apply the user-specified watch data including the stock market technical analysis formulae to the real-time stock market data in real-time to ascertain whether a valid response to the watch data has occurred based on the real-time stock market data, thereby determining an occurrence of the event defined by the user-specific watch data; and (d) causing a real-time notification by the network of computers to be provided to the user via a remote communications device upon the occurrence of the event defined by the user-specified watch data, the real-time notification directed to a remote communications device of the user so that the user can then provide instructions for share market transaction on an instantaneous basis.

(*Id.*, Ex. A at 9.) Market-Alerts alleges that each of the defendants infringes the '357 Patent by "provid[ing] or operat[ing] real-time stock trading products and/or services, which fall within the scope of the '357 Patent claims." (D.I. 24 at 3.)

## III.   STANDARD OF REVIEW

Section 18 of the AIA provides for the establishment of transitional post-grant review proceedings to reexamine the validity of covered business method patents ("CBM review"). Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18, 125 Stat. 284, 329–31 (2011). The

AIA also considers the effect of these proceedings on related patent infringement actions and authorizes the district courts to stay such parallel litigation under certain circumstances. Specifically § 18(b)(1) provides:

> If a party seeks a stay of a civil action alleging infringement of a patent under section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on—
> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

*Id.* § 18(b)(1).

This statutory test closely resembles the stay analysis courts have applied in assessing a motion to stay pending *inter partes* or *ex parte* reexamination by the Patent and Trademark Office (the "PTO"). *See, e.g., SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL 144255, at *2 (D. Del. Jan. 11, 2013) (applying three-factor stay test that asks "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage"); *Ever Win Int'l Corp. v. Radioshack Corp.*, No. 11-1104-GMS-CJB, 2012 WL 4801890, at *2 (D. Del. Oct. 9, 2012) (same). The substantial difference between the test set forth in § 18(b)(1) and that employed by courts in the ordinary patent reexamination context is the inclusion of a fourth factor, which requires the court to consider "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." §

6

18(b)(1)(D). This additional consideration was included, in part, to ease the movant's task of demonstrating the need for a stay.[4]

The AIA was signed into law on September 16, 2011, and CBM review came into effect one year later, in September 2012.

## IV. DISCUSSION

The petitioning defendants have sought post-grant review of the '357 Patent as a covered business method patent under 35 U.S.C. § 321 and § 18 of the AIA. The moving defendants now request a stay of this litigation pending the resolution of those CBM review proceedings.[5] The court will discuss each of the statutory stay factors outlined in § 18(b) below, addressing the

---

[4] Section 18 of the AIA was added through an amendment proposed by Senator Charles Schumer, which was included in the larger managers' amendment advanced by Senators Leahy and Grassley. *See* 157 Cong. Rec. S1030–32 (daily ed. Mar. 1, 2011) (statement of Sen. Patrick Leahy). During Congressional debate on the AIA, Senator Schumer himself provided a thorough discussion of this section. 157 Cong. Rec. S1363–65 (daily ed. Mar. 8, 2011) (statement of Sen. Charles Schumer).

Senator Schumer first made clear that the intent of the fourth stay factor was to "place[]a very heavy thumb on the scale in favor of a stay being granted." *Id.* at S1363. He then explained the need for express inclusion of this factor:

> Due to low grant rates for stays [pending PTO *ex parte* reexamination] in several jurisdictions, this amendment instructs courts to apply the four-factor test first announced in *Broadcast Innovation, L.L.C. v. Charter Communications* [No. 03-2223-ABJ-BNB, 2006 WL 1897165 (D. Colo. July 11, 2006)] when evaluating stay motions. The amendment employs the *Broadcast Innovation* test, rather than other multifactor tests employed by other district courts, because this test properly emphasizes a fourth factor that is often ignored by the courts: "whether a stay will reduce the burden of litigation on the parties and on the court." Too many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time. This is unacceptable, and would be contrary to the fundamental purpose of the Schumer-Kyl amendment to provide a cost-efficient alternative to litigation.

*Id.* at S1364.

[5] One preliminary issue is whether the statutory stay analysis set forth in § 18(b) is triggered upon a party's petition for post-grant review or only upon the Patent Trial and Appeal Board's ("PTAB's") institution of such review. (D.I. 19 at 8; D.I. 22 at 6.) The AIA states that "the court shall decide whether to enter a stay based on [the four enumerated factors]" whenever "a party seeks a stay of a civil action alleging infringement of a patent . . . relating to a transitional *proceeding* for that patent." § 18(b)(1) (emphasis added). Since the PTO has recognized that "the *proceedings* begin with the filing of a petition," the court finds that the relevant stay provisions apply when the petition is first filed. Office Patent Trial Practice Guide, 77 Fed. Reg. 48757 (Aug. 14, 2012) (emphasis added).

7

parties' specific arguments where applicable.[6]

A.    Issue Simplification

Section 18(b)(1)(A) instructs the court to consider "whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial." *Id.* As the court has previously recognized, staying an infringement case pending administrative review of the patent-in-suit's validity can simplify litigation in several ways:

> (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the [administrative review] may encourage a settlement without further involvement of the court, (5) the record of the [administrative review] would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court.

*Gioello Enters. Ltd. v. Mattel, Inc.*, No. 99-375-GMS, 2001 WL 125340, at \*1 (D. Del. Jan. 29, 2001).

The moving defendants reference the high rates of claim amendment and cancellation in the *inter partes* reexamination context to suggest that granting a stay here will narrow the issues before the court.[7] (D.I. 15 at 7.) Market-Alerts responds that a stay will not achieve the goal of issue simplification because (1) the limited scope of CBM review proceedings ensures that

---

[6] As Market-Alerts acknowledges, judicial decisions considering a motion to stay pursuant to § 18(b) of the AIA "are virtually nonexistent." (D.I. 19 at 7.) The court thus draws from its experience in the ordinary PTO reexamination context in considering the three common stay factors. This is consistent with the legislative history of the AIA, which suggests that the additional "burden of litigation" factor represents the sole statutory modification to the analysis—the court finds no indication that Congress intended to alter the way in which district courts assess the first three factors. *See* 157 Cong. Rec. S1363–64 (daily ed. Mar. 8, 2011) (statement of Sen. Charles Schumer).

[7] Statistics published by the PTO indicate that 377 reexamination certificates were issued between November 29, 1999, the beginning of *inter partes* reexamination, and June 30, 2012. Of those, only 11% confirmed all claims. On the other hand, all claims were canceled or disclaimed in 42% of cases, and at least some claims were amended in the remaining 47%. (D.I. 16, Ex. G at 1.)

certain issues will remain in litigation even after the administrative process is complete and (2) the CBM review is unlikely to result in claim cancellation or amendment  (D.I. 19 at 16–17.)

Of course, these two worries collapse into each other to some degree.  In raising its "scope" concern, Market-Alerts claims that "at least the issues of infringement, other invalidity defenses, damages and other equitable defenses will still have to be litigated even if the PTO grants CBM Review."  (*Id.*)  Implicit in this argument is an assumption that CBM review will not result in the cancelation of all claims of the '357 Patent—if that were to occur, it would effectively end these cases and extinguish any concerns about the scope of the review process. The merit of Market-Alerts' scope argument thus depends, in part, on the strength of the petitioning defendant's administrative challenge itself,[8] and, on that broader point, Market-Alerts contends that the petition for CBM review is unlikely to be granted or to succeed.  (*Id.* at 8–15.)

1.  Likelihood of Petition Being Granted

Market-Alerts first suggests that the petition for review will not even be granted because the claims of the '357 Patent fall within a statutory exception for "technological inventions." The AIA permits CBM review only for "covered business method patents," which it defines as "patent[s] that claim[] a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, *except that the term does not include patents for technological inventions.*"  § 18(d)(1) (emphasis added).  Pursuant to rulemaking authority delegated by § 18(d)(2) of the AIA, the PTO has further clarified that,

---

[8] The court recognizes that any assessment of the likelihood of patent claims being cancelled during a future administrative proceeding is inherently speculative. *See Texas MP3 Techs., Ltd. v. Samsung Elecs. Co.*, No. 2:07-CV-52, 2007 WL 2319372, at *2 n.2 (E.D. Tex. Oct. 3, 2007) (noting that "final disposition of any reexamination proceeding is unknown").  Such preliminary evaluations, however, are often demanded by the "issue simplification" factor.

> [i]n determining whether a patent is for a technological invention solely for purposes of the Transitional Program for Covered Business Methods . . . the following will be considered on a case-by-case basis: whether the claimed subject matter as a whole recites a technological feature that is novel and unobvious over the prior art; and solves a technical problem using a technical solution.

37 C.F.R. § 42.301(b) (2012). As the PTO has noted, this definition is consistent with the legislative history of the AIA. Transitional Program for Covered Business Method Patents—Definitions of Covered Business Method Patent and Technological Invention, 77 Fed. Reg. 48735 (Aug. 14, 2012) (quoting, *inter alia*, 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Charles Schumer) ("The 'patents for technological inventions' exception only excludes those patents whose novelty turns on a technological innovation over the prior art and are concerned with a technical problem which is solved with a technical solution and which requires the claims to state the technical features which the inventor desires to protect.")).

Market-Alerts contends that the '357 Patent falls within this technological invention exception because "the 357 Patent claims, as a whole, a set of technological features that are novel and unobvious over the prior art. Moreover, the widespread adoption of the patented invention within the industry, particularly by the big brokerages, directly evidences the value of the patented invention as a technical solution." (D.I. 19 at 11.) The court, however, believes that the '357 Patent likely does not meet the requirements of the statutory exception. The plain language of the PTO definition makes clear that when a party seeks to invoke the "technological invention" exception, it must do more than demonstrate that the *method* being claimed is novel—it must show that the "technological feature" itself is novel and unobvious. Here, the court presumes that the claimed "technological features" of the '357 Patent are the "network of computers" and the "remote communications device." As such, and despite Market-Alerts'

10

generalized protests to the contrary, neither a "network of computers" nor a "remote communications device" strikes the court as particularly novel.[9] Put simply, it seems likely that the petition for CBM review will be granted.[10]

### 2. Likelihood of Administrative Challenge Succeeding

Market-Alerts next contends that, even if the petition is granted, the defendants' validity challenge will fail before the PTAB. (D.I. 19 at 13–15.) Its principal argument on this point relates to the petitioning defendants' submission of material obtained through the Internet Archive's "Wayback Machine" as prior art.[11] (*Id.* at 13.) The court, however, is unimpressed by

---

[9] The court's assessment is consistent with the PTO's explanation that a patent neither conveys a "technological invention" through "[m]ere recitation of known technologies, such as computer hardware, communication or computer networks, software, memory, computer-readable storage medium, scanners, display devices or databases, or specialized machines, such as an ATM or point of sale device" nor simply by "reciting the use of known prior art technology to accomplish a process or method, even if that process or method is novel and non-obvious." Office Patent Trial Practice Guide, 77 Fed. Reg. 48764 (Aug. 14, 2012).

It also comports with the PTO's statement that "patents subject to covered business method patent review are anticipated to be typically classifiable in Class 705. It is anticipated that the number of patents in Class 705 that do not qualify as covered business method patents would approximate the number of patents classified in other classes that do qualify." Transitional Program for Covered Business Method Patents—Definitions of Covered Business Method Patent and Technological Invention, 77 Fed. Reg. 48735 (Aug. 14, 2012). Tellingly, the '357 Patent falls within Class 705. (D.I. 1, Ex. A at 2.)

[10] Market-Alerts also points to statements made during Congressional debates that indicate a heightened standard for granting a petition and instituting CBM review. Specifically, Senator Schumer observed that "to initiate a post issuance review under the new post grant or transitional proceedings, it is not enough that the request show a substantial new question of patentability but must establish that 'it is more likely than not that at least [one] of the claims challenged in the petition is unpatentable.'" 157 Cong. Rec. S5428 (daily ed. Sept. 8, 2011) (statement of Sen. Charles Schumer). Indeed, this test is now codified at 37 C.F.R. § 42.208(c) (2012) and 35 U.S.C. § 324(a). The heightened standard, however, does not alter the court's conclusion—for substantially the same reasons discussed in Section IV.A(2) below, the court believes the petitioning defendants will likely be able to make this threshold showing.

[11] Judge Kelly of the U.S. District Court for the Eastern District of Pennsylvania describes the Wayback Machine and its operation as follows:

[T]he Internet Archive is a nonprofit organization that has created an online library of digital media in an effort to preserve digital content for future reference. Its digital database is equivalent to a paper library, but is filled with digital media like websites instead of books . . . Internet Archive's database provides users with the ability to study websites that may have been changed or no longer exist. The chronological records are compiled by routinely taking screenshots of websites as they exist on various days. Internet Archive collects images through a process called crawling. A crawler or robot is an automated program that scours the Internet and takes pictures of

11

this line of attack. While the admissibility of Wayback-generated webpages remains somewhat uncertain,[12] Market-Alerts makes no attempt to discredit the additional printed publications presented by the defendants as prior art. (D.I. 22 at 8.) The court believes there is at least a reasonable chance that the PTAB will ultimately invalidate or cause Market-Alerts to amend some or all of the claims of the '357 Patent, and such a result would have simplifying effects on this litigation regardless of the scope limitations of CBM review. As such, this factor weighs lightly in favor of granting the motion to stay.

B.    Stage of Litigation

The second factor, which has the court consider how far litigation has already progressed, likewise favors a stay. America Invents Act § 18(b)(1)(B). Staying a case at an early juncture "can be said to advance judicial efficiency and maximize the likelihood that neither the [c]ourt nor the parties expend their assets addressing invalid claims." *SenoRx, Inc.*, 2013 WL 144255, at

---

every web page that it is instructed to visit . . . Any person with a web browser can search Internet Archive's database of archived images. Searching the database is accomplished via the Wayback Machine, which Internet Archive provides on its website. The Wayback Machine is an information retrieval system that allows the user to request archived screenshots of web pages that may be contained on the database . . . The image appears in the user's web browser just like a live website would appear, however, the user is not viewing a live website. Instead, the user sees the static version of the website that is stored in Internet Archive's database. The Wayback Machine only provides a window into the past where users can see what a website looked like on a specific date.

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer, & Frailey*, 497 F. Supp. 2d 627, 631 (E.D. Pa. 2007).

[12] The courts and agencies that have considered the reliability of documents generated by the Wayback Machine have reached varying conclusions. It appears that, while these documents have been deemed inadmissible for certain purposes, *see Novak v. Tucows, Inc.*, No. 06-1909-JFB-ARL, 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007) (striking webpages from evidence because they represented hearsay and were not properly authenticated pursuant to Rule 901 of the Federal Rules of Evidence), they have generally been accepted as evidence of prior art in the patent context, s*ee, e.g.*, *Keystone Retaining Wall Sys., Inc. v. Basalite Concrete Prods., LLC*, No. 10-4085-PJS-JJK, 2011 WL 6436210, at *9 n.9 (D. Minn. Dec. 19, 2011); *Ex parte Rowse*, No. 2010-5057, 2011 WL 3876553, at *2 (B.P.A.I. Aug. 30, 2011); *Ex parte Krivulka & Mazur*, No. 2010-003098, 2010 WL 3820666, at *4 (B.P.A.I. Sept. 28, 2010); *Ex parte Shaouy & Trevathan*, No. 2007-0987, 2007 WL 1591662, at *3 (B.P.A.I. May 24, 2007) . Regardless, given the additional printed prior art offered by the moving defendants (and ignored by Market-Alerts), the court need not resolve this issue here.

*5 (internal quotation omitted). On the other hand, when confronted with a motion to stay in the later stages of a case, "the [c]ourt and the parties have already expended significant resources on the litigation, and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion." *Id.*

As the moving defendants accurately point out, these actions are "still at the earliest possible stage. No conferences with the [c]ourt have occurred; no schedules have been set; no substantive motions have been filed; and the [c]ourt has issued no substantive rulings." This factor thus weighs strongly in favor of a stay.[13] *See Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, No. 06-514-GMS, 2007 WL 2892707, at *5 (Sept. 30, 2007) (finding that a stay pending PTO reexamination was warranted "where the court has not yet conducted a Rule 16(2)(b) scheduling conference, no scheduling Order is in place, no discovery has taken place, and little time has yet to be invested in the litigation").

   C.    Undue Prejudice

The court is next instructed to consider the potential for a stay to unduly prejudice the plaintiff or place it at a clear tactical disadvantage. America Invents Act § 18(b)(1)(C). In the context of a motion to stay pending reexamination, the court has previously noted that waiting for the administrative process to run its course risks prolonging the final resolution of the dispute and thus may result in some inherent prejudice to the plaintiff. *See Textron Innovations, Inc. v. Toro Co.*, No. 05-486-GMS, 2007 U.S. Dist. LEXIS 100102, at *8 (D. Del. Apr. 25, 2007). The court also recognizes, however, that the potential for delay does not, by itself, establish *undue*

---

[13] Apparently attempting to contest this "stage of litigation" factor, Market-Alerts notes that the PTO may not grant the petition and actually institute post-grant review until April 22, 2013. (D.I. 19 at 17.) It then points out that at least another year will pass before the PTO issues a decision. (*Id.*) Though the court appreciates this argument, it is a point more appropriately addressed under the "undue prejudice" stay factor below.

13

prejudice. *See Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, No. 09-571-JJF, 2010 WL 2573925, at \*3 (D. Del. June 25, 2010); *Wall Corp. v. BondDesk Grp., LLC*, No. 07-844-GMS, 2009 WL 528564, at \*2 (D. Del. Feb. 24, 2009).   Rather, in determining whether a plaintiff might be unacceptably prejudiced by a stay, the court turns to additional considerations including the timing of the stay request, the timing of the administrative review request, the status of the review proceedings, and the relationship between the parties. *See, e.g., Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011); *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, No. 10-503-SLR, 2010 WL 4823393, at \*2 (D. Del. Nov. 22, 2010).

In these actions, neither the timing of the CBM review petition nor the timing of the stay request suggest any inappropriate dilatory motive on the defendants' part.   The petition was filed on October 15, 2012, less than one month after the review program went into effect, and the motion to stay was filed on November 9, 2012.   (D.I. 15 at 4.)

The relationship between the parties is also considered, as "[c]ourts are generally reluctant to stay proceedings where the parties are direct competitors." *Boston Scientific Corp.*, 777 F.2d at 789; *see also ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, No. 12-054-GMS-MPT, 2012 WL 5599338, at \*4–5 (D. Del. Nov. 15, 2012); *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, No. 10-503-SLR, 2010 WL 4823393, at \*2 (D. Del. Nov. 22, 2010).   In such cases, "there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL 144255, at \*5 (D. Del. Jan. 11, 2013).   There is no evidence, however, that Market-Alerts directly competes with any of the defendants' accused products, (D.I. 15 at 10

14

n.5), and its own responsive brief indicates that, at this point, patent infringement litigation represents its primary business, (D.I. 19 at 6). As such, this consideration does not suggest that a stay would cause Market-Alerts undue prejudice.

Finally, the court examines the status of the administrative review. In order to make that assessment here, however, it first is necessary to understand the expected timeline for CBM review proceedings. The PTO provides the following summary:

> Generally, the proceedings begin with the filing of a petition that identifies all of the claims challenged and the grounds and supporting evidence on a claim-by-claim basis. Within three months of notification of a filing date, the patent owner in a[] . . . CBM proceeding may file a preliminary response to the petition, including a simple statement that the patent owner elects not to respond to the petition. The Board acting on behalf of the Director will determine whether to institute a trial within three months of the date the patent owner's preliminary response was due or was filed, whichever is first . . . The Board will enter a Scheduling Order . . . concurrent with the decision to institute a trial. The Scheduling Order will set due dates for the trial taking into account the complexity of the proceeding but ensuring that the trial is completed within one year of institution.

Office Patent Trial Practice Guide, 77 Fed. Reg. 48757 (Aug. 14, 2012) (including a graphic detailing the timeline for CBM review proceedings). The court notes that the PTO may extend the proceeding by up to six months upon a showing of good cause. 37 C.F.R. § 42.200(c) (2012).

Here, the petitioning defendants filed their request for CBM review on October 15, 2012, and Market-Alerts was notified of the petition on October 22, 2012. (D.I. 16, Ex. C.) As such, Market-Alerts' preliminary response was due and presumably filed on January 22, 2012. (*Id.*) It is possible that the PTO may not decide to grant the petition for CBM review of the '357 Patent until April 2013, and, if review is granted, a decision may not be issued until April 2014.

(D.I. 19 at 6.)  With this timeline in mind, the court has little difficulty concluding that the CBM review is in its early stages and that this particular consideration weighs against granting a stay.

Nevertheless, viewing the "undue prejudice" factor as a whole, the court finds that it favors a stay of litigation.  The potential for excessive prejudice is reduced by the fact that the parties do not directly compete with each other, and there is no evidence of dilatory motive on the part of the defendants.  While the CBM review proceedings are admittedly in their early stages, the delay that can be expected from that process neither outweighs the above considerations nor controls the court's analysis.

D.     Burden of Litigation

Section 18 of the AIA adds a fourth factor to the traditional stay analysis, instructing the court to consider "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court."  § 18(b)(1)(D).  It appears the intent of this provision was to ensure that district courts would grant stays pending CBM review proceedings at a higher rate than they have allowed stays pending *ex parte* reexaminations.[14]

Market-Alerts argues that, if a stay were granted in this litigation, the issue simplification

---

[14] *See, e.g.*, 157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) (statement of Sen. Jon Kyl) ("In pursuit of this congressional policy strongly favoring stays when proceedings are instituted under [§ 18], subsection [(b)] incorporates the four-factor test for stays of litigation that was first announced in *Broadcast Innovation, LLC v. Charter Communications* . . . ."); 157 Cong. Rec. S1363–64 (daily ed. Mar. 8, 2011) (statement of Sen. Charles Schumer) (suggesting that the fourth factor effectively "places a very heavy thumb on the scale in favor of a stay being granted" and noting his expectation that "if a proceeding against a business method patent is instituted, the district court would institute a stay of litigation unless there were an extraordinary and extremely rare set of circumstances not contemplated in any of the existing case law related to stays pending reexamination"); 157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) (statement of Sen. Charles Schumer) ("One of the most critical elements of [the Schumer-Kyl] amendment has to do with the stay of litigation while review of the patent is pending at the PTO. The amendment includes a four-factor test for the granting of a stay that places a very heavy thumb on the scale in favor of the stay. Indeed, the test requires the court to ask whether a stay would reduce the burden of the litigation on the parties and the court. Since the entire purpose of the transitional program at the PTO is to reduce the burden of litigation, it is nearly impossible to imagine a scenario in which a district court would not issue a stay.").

goal would be frustrated by the fact that related lawsuits would proceed normally during the course of the stay. (D.I. 19 at 17.) As noted above, while the defendants in the 12-784 and 12-785 actions agree that a stay is appropriate here and do not oppose the moving defendants' request, they have not actually moved to stay their own cases. Market-Alerts warns that granting a stay in the moving defendants' actions would compel it "to litigate essentially identical cases in multiple forums, wasting the time and resources of both this Court and the PTO. In fact, a stay may actually result in an increased burden on the parties or the Court, which would normally be avoided through consolidation and coordination of related cases." (*Id.*)

While the court appreciates Market-Alerts' argument on this point and might even be inclined to agree with it under different circumstances, it is inapplicable here, as the court will order that the nonmoving defendants' actions also be stayed. Of course, the complicating issue here is that § 18(b) of the AIA does not authorize a district court to stay a case unless a party affirmatively seeks such relief. Since none of the defendants in the 12-784 and 12-785 actions have requested a stay, the court cannot stay these cases under the statutory authority conferred by the AIA. Rather, the court will order a stay as an exercise of its discretion and in the interests of judicial and litigant economy.[15] The rationale underlying this order is captured in Sections IV.A–C above, and the court's decision is further grounded in the fact that all parties involved have expressed willingness to stay each of the related actions. (D.I. 19 at 19; D.I. 22 at 10.)

---

[15] A court's broad authority to stay proceedings "is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel and for litigants." *See Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207 (3d Cir. 1976) (quoting *Landis v. North Amer. Co.*, 299 U.S. 248, 254–55 (1936)). Moreover, courts have recognized that this power may be exercised *sua sponte*. *See, e.g., Tatum v. Chrysler Grp., LLC,* No. 10-4269, 2011 WL 6303290, at *3 (D.N.J. Dec. 16, 2011)*; First Nonprofit Ins. Co. v. Alexander*, No. 09-465-RFK, 2009 WL 2256473, at *4 (E.D. Pa. July 27, 2009); *Rogers v. Ameriprise Fin. Servs., Inc.*, No. 07-6876-WRA, 2008 WL 4826262, at *2 (N.D. Ill. Nov. 4, 2008); *Maurer v. UAW*, 487 F. Supp. 731, 740 (M.D. Pa. 1979).

17

Given the court's decision to stay the 12-784 and 12-785 actions, it is clear that granting the present motion will reduce the burden of litigation on both the parties and the court. This conclusion is only reinforced by the legislative intent underlying this fourth stay factor.

## V.   CONCLUSION

For the foregoing reasons, the court will grant the motion to stay the 12-780, 12-781, 12-782, and 12-783 actions pursuant to § 18(b) of the AIA. Each of the four statutory factors weighs in favor of granting a stay pending resolution of the CBM review proceedings. Additionally, the court will stay the 12-784 and 12-785 actions as an exercise of its discretion and in the interests of judicial and litigant economy.

18